IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| XPO LOGISTICS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AARON PETERSON, an individual<br><br>Defendant. | MEMORANDUM DECISION AND ORDER ON MOTION TO CONSOLIDATE<br><br>Case No.  2:15-cv-00703-CW-DAO<br><br>Judge Clark Waddoups<br>Magistrate Judge Daphne A. Oberg |

Before the court is Plaintiff XPO Logistics, Inc.'s ("XPO") Motion to Consolidate ("Motion") filed on January 25, 2022.  (ECF No. 239.)  Defendant Aaron Peterson ("Mr. Peterson") filed an opposition memorandum on February 8, 2022 (ECF No. 243) to which XPO replied on February 15, 2022 (ECF No. 244).  Having reviewed the briefing and record, the court GRANTS the Motion.

## BACKGROUND

XPO moves to consolidate this action, *XPO Logistics v. Peterson*, Case No. 2:15-cv-703-CW-DAO ("Initial Action") with *Peterson v. XPO Logistics*, Case No. 2:17-cv-00307-JNP-JCB ("Second Action").  XPO filed the Initial Action against Mr. Peterson on September 29, 2015, for breach of contract, tortious interference, and aiding and abetting breach of fiduciary duty.  XPO alleges Mr. Peterson breached his contractual and employee fiduciary duties by, *inter alia*, soliciting XPO customers and employees and using XPO confidential information to benefit Leeway Global Logistics ("Leeway"), XPO's direct competitor.  (ECF No. 172.)

The Second Action arose from discovery conducted in the Initial Action wherein XPO's counsel produced to Leeway's counsel an inculpatory email exchange between Mr. Peterson and a Leeway employee. The email exchange shows Mr. Peterson, an employee of Leeway at the time, targeting XPO customers and employees to join Leeway in direct violation of XPO's restrictive convents. Upon receipt of the email exchange, Leeway terminated Mr. Peterson's employment. Mr. Peterson alleges he did not participate in the email exchange but that the emails are forgeries drafted by XPO employees to damage Mr. Peterson. In response, Mr. Peterson filed the Second Action against XPO on April 19, 2017, for defamation, tortious interference, false light, injurious falsehood, and identity theft. (ECF No. 2.) Mr. Peterson also filed a Counterclaim on November 27, 2019, in the Initial Action that is virtually identical to the Complaint in the Second Action. (ECF No. 193.) Both lawsuits are in the final stages of litigation with fact and expert discovery closed in both cases and dispositive motions pending in the Second Action.[1]

XPO now moves to consolidate the Second Action with the Initial Action because the cases would be more effectively resolved in one-action as they share central issues of fact and law and include identical parties and primary witnesses. (ECF No. 239 at 2). XPO states, "[b]oth cases relate to Mr. Peterson's . . . leaving his employment at XPO to work for a competitor, Leeway Global Logistics . . . , and his subsequent termination from Leeway." (*Id*.) More importantly, XPO claims

---

[1] Mr. Peterson filed a motion to extend expert discovery (ECF No. 66) in the Second Action on March 2, 2022. While the motion was denied without prejudice and without comment as to the merits of the motion (ECF No. 75), the court notes that Mr. Peterson's request to extend the expert discovery deadline was untimely, having been filed 7 days after Mr. Peterson's February 23, 2022 expert disclosure and report deadline in the Second Action and over a month after XPO filed its motion to consolidate (ECF No. 239) on January 25, 2022 in the Initial Action.

that determination of the authenticity of the emails is a common question of fact in both cases. (*Id*. at 6). For the reasons discussed below, the court agrees with XPO.

## **DISCUSSION**

Federal Rule of Civil Procedure 42(a) governs consolidation and states, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also* DUCivR 42(a). "[T]he party seeking consolidation has the burden of establishing consolidation is proper under Rule 42(a)." *Phillip M. Adams & Assocs*., LLC v. Dell Inc., 1:05-CV-64TS, 2008 WL 203316, at *2 (D. Utah Jan. 23, 2008).

The court must address two issues in determining whether to consolidate actions. First, the court must consider whether the cases involve common parties and common issues of law or fact. *Leeds v. Matrixx Initiatives, Inc.*, No. 2:10-cv-199-DAK, 2012 WL 1119220, at *1 (D. Utah Apr. 2, 2012). If the required commonalities are found, the court then must weigh the interests of judicial convenience in consolidating the cases against the delay, confusion, and prejudice that consolidation might cause. *Id*. Consolidation is a question of convenience and economy in judicial administration, and this court is given broad discretion to decide whether consolidation under Fed. R. Civ. P. 42 would be desirable.

    **I.    SAME PARTIES AND ISSUES OF FACT**

First, the Initial Action and Second Action involve identical parties and will rely on similar witnesses. Second, the cases involve overlapping issues of fact as the Second Action arises out of events from the Initial Action. Namely, two emails produced during discovery in the Initial Action by XPO alleged to demonstrate Mr. Peterson's culpability for soliciting XPO clients and employees in violation of his contractual obligations gave rise to the Second Action. Mr. Peterson denied the

authenticity of the two emails and subsequently filed the Second Action wherein Mr. Peterson asserts the emails are forgeries that XPO fraudulently produced during discovery in the Initial Action. While the Second Action does not involve overlapping issues of law *per se*, the outcome of Mr. Peterson's forgery claims (i.e., the authenticity or inauthenticity of the email exchange) is a factual issue that is directly relevant and potentially dispositive to certain claims in the Initial Action.

Mr. Peterson asserts that the cases should not be consolidated because XPO did not preserve its right to a jury in the Initial Action, "there are no overlapping elements of any of the causes of actions between the two cases" and "the underlying claims in these cases ultimately would be proved (or disproved) by different facts," and Mr. Peterson would have to retain counsel in the Initial Action. (ECF No. 243 at 1-2, 5). The court is not persuaded by Mr. Peterson's arguments. First, Mr. Peterson's assertion that XPO is nefariously attempting to revive its right to a jury trial is incorrect as the entitlement to a jury trial in the Initial Action was properly preserved by Mr. Peterson's election for a jury trial in his Answer and Counterclaim (ECF No. 193) and XPO's filing on the docket included payment for and request of a Jury Demand. *See* Fed. R. Civ. P. 38; *Gargiulo v. Delsole*, 769 F.2d 77, 79 (2d Cir. 1985) (holding that plaintiffs were entitled to rely on defendant's jury demand to preserve their own right to jury trial); *MIT Fed. Credit Union v. Cordisco*, 501 F. Supp. 3d 17, 20 (D. Mass. 2020) (stating that the right to a trial by jury is constitutionally protected and casual waivers are not to be presumed). Second, for the reasons already discussed, the court finds the factual issues and legal outcomes of the Second Action materially relevant to the issues in the Initial Action. Third, Mr. Peterson has oscillated between represented and unrepresented by counsel throughout the entirety of litigation and consolidating the actions does not force Mr. Peterson to proceed one way or the other; he may continue to proceed pro se or retain counsel as he sees appropriate.

## II.     BENEFITS OUTWEIGH COSTS

Next, judicial convenience outweighs any potential delay, confusion, and prejudice that consolidation might cause. Consolidating the cases would remove the need for two different courts in the same judiciary to review much of the same facts from the same parties. Also, there is little to no risk of delay or confusion caused by consolidation. In fact, the court in the Initial Action would need to coordinate and depend on factual and legal determinations made by the court in the Second Action regarding the authenticity of potentially dispositive evidence. Lastly. there is no foreseeable prejudice to the parties by consolidating all or part of the two cases because doing so will save considerable time and expense by determining dispositive issues within the same action or by litigating a single trial rather than two regardless of Mr. Peterson's decision to represent himself or retain counsel.

## ORDER

It is therefore ORDERED that XPO's Motion to Consolidate (ECF No. 239) is hereby GRANTED. The present case will be consolidated with *Peterson v. XPO Logistics*, Case No. 2:17-cv-00307-JNP-JCB, current assigned to District Judge Jill N. Parrish.

DATED this 6th day of May, 2022.

BY THE COURT:

_____
Clark Waddoups
United States District Judge